UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

MONTANA STATE GOLD COMPANY, LLC, a Montana limited liability company; BRIMSTONE MINING, INC., a Montana corporation; IDAHO STATE GOLD COMPANY II LLC, an Idaho limited liability company; QUARTZBURG EQUITY HOLDINGS, LLC, an Idaho limited liability company; QUARTZBURG GOLD, LP, an Idaho limited partnership; and ISR CAPITAL, LLC, an Idaho limited liability company,

Plaintiffs,

v.

RONALD GUILL and STACY GUILL, husband and wife,

Defendants.

Case No. 1:26-cv-00242-DCN

**MEMORANDUM DECISION AND ORDER**

## I. INTRODUCTION

Before the Court is Defendants Ronald and Stacy Guills's (the "Guills") Motion to Dismiss Complaint for Declaratory Relief (the "Motion to Dismiss"). Dkt. 5. For the reasons below, the Court DENIES the Motion to Dismiss.[1]

## II. BACKGROUND

Plaintiffs Montana State Gold Company, LLC; Brimstone Mining, Inc.; Idaho State Gold Company II, LLC; Quartzburg Equity Holdings, LLC; Quartzburg Gold, LP; and ISR

[1] The Court finds the facts and legal arguments are adequately presented and will decide the Motion on the record and without oral argument. Dist. Idaho Loc. Civ. R. 7.1(e)(1)(B).

Capital, LLC ("Plaintiffs") are entities involved in a previous action—*SEC v. Muroff*[2]—in which they entered into a consent agreement wherein the Court compelled them to make payments to the Securities and Exchange Commission ("SEC") based on various allegations of fraud. Dkt. 2-2, at 7. The Consent Judgment also required the entities retain both an Independent Monitor (the "Monitor") and an Independent Manager (the "Manager") to ensure their compliance with the Court's order as well as to ensure they protected the ongoing interests of various third-party investors who had been harmed by their illegal activities as well as those of their management. *Id.* at 11.

The affected entities were to give the Monitor and the Manager control over the entire business enterprise. *Id.* Although the Consent Judgment granted the Monitor substantial independence to carry out the Court's instructions, it left the SEC with the ability to pursue an action if, in its view, Plaintiffs had not complied with the decree or were not acting in the best interests of the investors. *Id.* at 16. With respect to the duties of the Monitor and the Manager, the Court provided lengthy, detailed instructions. *Id.* at 10–17. Those duties included, but were not limited to, the appointment of various professionals and employees to assist in conducting the Monitor's duties, the making of recommendations regarding the activities of the affected entities, and the operation of the job creating businesses run by Blackhawk and ISR Capital by both the Monitor and the Manager. *Id.* at 11.

The Guills filed a lawsuit against the Plaintiffs, as well as the Monitor, Krista

[2] Judge Edward J. Lodge originally presided over that case—Case No. 1:17-cv-00180—but it was reassigned to Senior District Judge B. Lynn Winmill when Judge Lodge took inactive senior status.

Freitag, and the Manager, Brian Dickens, on March 19, 2026, in Idaho state court. Dkt. 5-1, at 2. The state court complaint alleges fraudulent transfer, constructive fraud, insider preference, an equitable creditor's bill, declaratory relief, and turnover of a bond fund in connection with the transfer of funds from Brimstone to Montana State Gold Company ("MSGC"). *Id.* The Guills assert, because MSGC holds a 100% interest in Brimstone, the funds should have been directly transferred to MSGC which could have then paid those funds toward the $7 million plus debt MSGC owes to the Guills. *Id.*

The Plaintiffs allege they undertook all conduct currently being challenged in the state court case pursuant to the Consent Judgment in the prior federal litigation and, as a result, now ask the Court to enter a declaratory judgement retaining exclusive jurisdiction over the issues raised by the Guills. *See generally* Dkt. 2.[3] The Guills have since filed the Motion to Dismiss alleging the Court lacks jurisdiction and, consequently, the Plaintiffs have not stated a cognizable cause of action. Dkt. 5.

## III. LEGAL STANDARD

### A. Motion to Dismiss Under 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) allows a party to move to dismiss claims for lack of subject matter jurisdiction. Fed R. Civ. P. 12(b)(1). Either party may raise the issue that a court lacks subject matter jurisdiction, or a court may do so on its own initiative, at any stage in the litigation, even after trial and the entry of judgment. *Arbaugh v. Y&H*

[3] Notably, the Defendants in the state court action moved to dismiss based upon the same idea—that the District of Idaho federal court, not the state of Idaho, had jurisdiction over the Guills's claims. Oral argument was purportedly set for August 10, 2026, on that motion. The Court has not received any notice or update regarding the status or outcome of that motion.

*Corp.*, 546 U.S. 500, 506 (2006). "Dismissal for lack of jurisdiction is not warranted to the extent that the complaint pleads facts from which federal jurisdiction clearly may be inferred." *Demarest v. United States*, 718 F.2d 964, 965 (9th Cir. 1983). A Rule 12(b)(1) jurisdictional attack may be facial or factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). "[I]n a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id.*

Courts may exercise ancillary subject matter jurisdiction in two circumstances: "(1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent, and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 379–80 (1994).

**B. Motion to Dismiss Under 12(b)(6)**

A complaint may survive a Rule 12(b)(6) motion to dismiss so long as it contains sufficient factual matter to state a claim that is "plausible on its face," which requires "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint need not contain "detailed factual allegations"; rather, it need only provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Dismissal is appropriate only where the complaint

lacks "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citation modified).

## IV. DISCUSSION

### A. Motion to Dismiss Under 12(b)(1)

The Guills argue, because the Court's original ruling does not directly retain jurisdiction over third party claims and because they are not bound by the Consent Judgment, the Plaintiffs cannot establish a basis for the Court's subject matter jurisdiction in this case. Specifically, the Guills argue the Court should dismiss this case outright without even contemplating whether the Consent Judgment covers the conduct of the Plaintiffs. *See generally* Dkt. 5. The Guills misunderstand a critical component of why courts exercise ancillary jurisdiction: the effectuation of a court's decrees.

The Guills rely heavily on a prior decision in the *SEC v. Muroff* case to bolster its argument that the Court will not exercise jurisdiction over independent third parties or separate legal proceedings. Dkt. 5-1, at 10. However, the circumstances there differ from those present now. After the Consent Judgment was entered, the Manager filed a motion to stay litigation that had been brought by investors *in other federal actions* because of the alleged tangential effect the litigation in those courts could have on his ability to bring the entities into compliance with the Court's order. *Id.* Judge Lodge noted the original Consent Judgment specifically contemplated the exact kind of "Related Investor Actions" at issue in the other federal litigation. *Id.* at *2. Nevertheless, Judge Lodge ultimately held he did not have jurisdiction to stay matters not on his own docket (*id.* at *7) and that allowing

related litigation to proceed was not inconsistent with the Consent Judgment (*id.* at *8).

The Plaintiffs do not ask for a stay here. Thus, the applicability of Judge Lodge's prior order is not directly on point. In this suit, Plaintiffs seek a Court order that their actions fall under the Court's exclusive purview and any qualms with their actions must, therefore, be litigated in this forum. Again, the Guills counter the Court should dismiss the action immediately and with prejudice without even considering this issue. But none of the documents in *Muroff*—the Consent Judgment or Judge Lodge's prior order—contemplated a circumstance like this one. The Guills were not parties in the prior suit. And they are not third-party investors affected by the misconduct of the Plaintiffs—at least insofar as it applies to the prior litigation regarding investor fraud. Instead, they are outside creditors claiming conduct undertaken by the Manager and the Monitor is fraudulent and therefore, presumably, outside the scope of the Court's Consent Judgment and jurisdiction.

In their Reply, the Guills cite *Pigford v. Veneman* to support the contention that a court may not unhinge its interpretative authority from its authority to enforce a judgement. Dkt. 10, at 8. This argument does not apply here because the Court's enforcement authority is intimately tied to this action. In *Pigford v. Veneman*, the plaintiffs did not seek enforcement but rather the interpretation and subsequent modification of a consent decree "as justice require[d]." 292 F.3d 918, 919 (9th Cir. 2002). The Ninth Circuit held district courts "enjoy no free-ranging 'ancillary' jurisdiction to enforce consent decrees" and are instead constrained by the terms of the decree itself. *Id.* at 924. The Ninth Circuit also held district courts do not possess inherent interpretive power over a decree divorced from their enforcement authority. *Id.* Importantly, that court held a modification would have been

appropriate where a party showed the modification would "ensure compliance." *Id.* at 924–25.

The Plaintiffs in this case do not ask the Court to interpret or modify the Consent Judgment. Instead, they ask the Court to interpret their conduct through the lens of the Consent Judgment to determine if that conduct falls within its scope. The need to ensure compliance is implicit. If the Court makes no ruling regarding the Plaintiffs' compliance or lack thereof, a subsequent state court ruling could inadvertently drag their conduct out of compliance with the federal Consent Judgment.

In *Flanagan v. Arnaiz*, the Ninth Circuit embraced the rulings of other circuit courts suggesting district courts need not include the word "exclusive" in a statement retaining jurisdiction over future conduct contemplated by a judgement for that retention to be exclusive. 143 F.3d 540, 545 (9th Cir. 1998). In that case, the Circuit held that to decide otherwise would be to risk frustrating the purpose of federal district courts and to place state judges in the unenviable position of needing to rule on the intentions of federal judges. *Id.* That ruling applies here. The Defendants' argument that the exceptions outlined in *Flanagan* do not apply here is unavailing because there may well be a need for the Court to act in order to protect or effectuate the prior Consent Judgment and order. *Id.*; Dkt. 10, at 11. The potential harm a state court ruling on this matter could do to the Court's order is apparent, and the Court need not wait and hope a state court ruling does not frustrate its purposes before asserting jurisdiction.

The Consent Judgment laid out extensive instructions for both the Monitor and the Manager including the hiring of staff, the managing of expenses, and the operation of

businesses meant to benefit injured investors. If this Court were to agree with the Guills that it does not have the jurisdiction or authority to oversee their complaints about what the Monitor and Manager were doing, that would necessarily place a state judge in the position of determining whether the actions taken by the Plaintiffs in this action were taken pursuant to a federal court's order or as part of a scheme to defraud the Guills. Not only that, but the state court could reach a decision contrary to the intent of Judge Lodge's Consent Judgment.

The Court cannot conceive of a way the state court could otherwise decide the action before it, and the Court is not encouraged by the fact the Guills chose not to even mention the relevant federal court action in their state court complaint. *See generally* Dkt. 2-1. Plaintiffs have already raised the federal Consent Judgment as a defense in the state court case which will necessitate analysis by the state court. The potential result of this could well be that Plaintiffs become subject to a state court ruling that places them out of compliance with this Court's ruling or the Consent Judgment.

### B. Motion to Dismiss Under 12(b)(6)

The Guills appear to rest their 12(b)(6) argument entirely on the contention that, because the Court lacks subject matter jurisdiction, the Plaintiffs cannot state a claim. Dkt. 10 at 11. Because the Court has concluded it has jurisdiction, dismissal is not appropriate under this standard either and the Court need not further analyze this argument.

## V. CONCLUSION

Because the Plaintiffs have adequately proven the need for the Court to exercise ancillary jurisdiction over this issue for the purpose of determining whether their actions

are covered by the Court's Consent Judgment, the Guills' Motion to Dismiss is DENIED. It remains true the Defendants could prevail in this action. However, the Court must exercise jurisdiction over the issue to answer that question in a manner which will not result in unnecessary conflict and confusion. Said another way, the Court is simply deciding today, under Rule 12(b)(1), that is has jurisdiction to hear the claims at issue in this case concerning potential jurisdiction over the Guills' state law claims. But the Court is not actually deciding today the ultimate question regarding whether the Guills' state law claims fall under the Consent Judgment or not. That is left for later in the case.

## VI. ORDER

1. The Guills' Motion to Dismiss Complaint for Declaratory Relief (Dkt. 5) is DENIED.

DATED: November 23, 2026

David C. Nye
U.S. District Court Judge